CYNTHIA H. HARDAWAY, ESQ.
17 Washington Street, 1st Fl.
Montclair, New Jersey 07042
(973) 725-4300
Attorney for Plaintiff
Monique Rodwell
Brandon Rodwell
Jaykil Rodwell
Jasper Spivey

| | |
|---|---|
| MONIQUE RODWELL, BRANDEN RODWELL, JAYKIL RODWELL, and JASPER SPIVEY | UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY CIVIL ACTION NO.: |
| Plaintiff, | |
| v. | |
| CITY OF NEWARK, MAYOR RAS BARAKA,(individually and in his official capacity), FORMER PUBLIC SAFETY DIRECTOR BRIAN A. O'HARA (individually and in his official capacity), CHIEF OF STAFF AMIRI BARAKA, Jr. (individually and in his official capacity), SGT.TARAY J. TUCKER(individually and in his official capacity), SGT. LUIS RIVERA (individually and in his official capacity), DET. M. DaSILVA (individually and in his official capacity), DET. C. SERRANO (individually and in his official capacity), FORMER CAPTAIN RASHEEN PEPPERS (individually and his official capacity), LT. P. RANGES, DET. THOMAS BENDER, and JOHN DOES 1 through 10, JANE DOES 1 through 10, and ABC Corp. through XYZ, individually, jointly and severally, | COMPLAINT AND DEMAND FOR JURY TRIAL |
| Defendants. | |

MONIQUE RODWELL, BRANDEN RODWELL, JAYKIL RODWELL, and

**JASPER SPIVEY** are black citizens of the State of New Jersey and residing at 58 Cypress Street, City of Newark, State of New Jersey, County of Essex, by way of complaint against the defendants hereby say:

## I.  JURISDICTION AND VENUE

1.  Jurisdiction of this court is evoked pursuant to 28 U.S.C. § 1331 in as much as this matter involves causes of action arising under 42 U.S.C. §§ 1981 and 1985, and the First, Fourth, Fifth, and Fourteenth Amendment to the United States Constitution.

2.  Jurisdiction of this court is evoked pursuant to 28 § U.S.C. 1343 in as much as this matter involves causes of action seeking redress for the deprivation under color of state law of rights existing under the First, Fourth, Fifth, and Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. §1983.

3.  The jurisdiction of the claims based on New Jersey law, statute, and State Constitution which are set forth in this complaint, is invoked pursuant to pendant jurisdiction of this Court.

## II.  PARTIES TO THE ACTION

4.  Plaintiff Monique Rodwell, Branden Rodwell, Jaykil Rodwell, and Jasper Spivey at all times relevant resided

and currently reside at 58 Cypress Street, Newark, New Jersey.

5.    Upon information and belief, defendant City of Newark is a municipal corporation in Essex County, New Jersey Organized under the laws of the State of New Jersey whose principal place of business is 22 Franklin Street, Newark, New Jersey 07103.

6.    Defendant Ras Baraka (Mayor Baraka), at all times relevant, was and is the Mayor of the City of Newark, residing in the State of New Jersey and subject to the jurisdiction of this Court.

7.    Defendant former Public Safety Director Brian O'Hara (O'Hara), at all times relevant, was the Public Safety Director for the City of Newark, resided in the State of New Jersey, and is subject to the jurisdiction of this Court.

8.    Defendant Amiri Baraka, Jr. (Chief of Staff Baraka), at all times relevant, was and is the Chief of Staff to Mayor Baraka as well as his brother.  Chief of Staff Baraka resides in the State of New Jersey and is subject to the jurisdiction of this Court.

9.    Defendants Captain Rasheen Peppers, Sgt. Taray J. Tucker, Sgt. Luis Rivera, Det. M. DaSilva, and Det. C. Serrano, at all times relevant, were employed by the City of Newark as police officers.

10.    Defendant officers Lt. P. Ranges and Det. Thomas

Bender, at all times relevant, were employed by the Essex County Prosecutor's Office.

11.   Defendants John Does 1 through 10, Jane Doe 1 through 10, and Corp. ABC through XYZ are fictitious names of other individuals who aided and abetted and/or conspired with defendants to deprive plaintiffs of their civil rights.

### III.   <u>BACKGROUND AND NATURE OF ACTION</u>

12.   Plaintiffs Monique Rodwell (Monique), Branden Rodwell (Branden), Jaykil Rodwell (Jaykil), and Jasper Spivey (Jasper) are black private citizens residing in the South Ward of the City of Newark, New Jersey.

13. On or around June 1, 2021, at around 1:29 p.m., Jaykil, Justin, and Jasper, (all brothers) were standing outside of their home looking at clothes that a man had brought over inside of his van.  Jaykil was carrying a fanny pack.

14.   As the three brothers were standing in front of the clothes van, they were approached by three unknown individuals, later identified as defendants Det. M. DaSilva, Det. C. Serrano, and Lt. P. Ranges of the Essex County Prosecutor's Office, then assigned to the Newark Police Division Criminal Intelligence Section. All officers were in plain clothes and driving unmarked cars.

15.   Without any lawful authority whatsoever, defendant

Det. M. DaSilva exited his vehicle and immediately snatched
Jaykil's fanny pack off his person while defendants Det. C.
Serrano and Lt. P. Ranges proceeded to assault him.  As the
video footage reveals, no officer identified themselves as
police, stated to Justin, Jaykil, or Jasper that either one of
them was being arrested, or even stated the purpose of their
presence at all.  Instead, the officers proceeded to accost
Jaykil immediately after exiting their unmarked vehicles, much
to the alarm and dismay of all the brothers.

16.  Having no idea what was happening or who the
officers were at the time, Jasper and Justin attempted to
prevent the assault upon their brother Jaykil, who is
asthmatic, and his property. As the melee continued and none
of the officers ever identified themselves, Jasper told Det.
DaSilva to return his fanny pack, which contained his portion
of his mother Monique's rent for the month.  Det. M. DaSilva
refused to relinquish the fanny pack and instead began to
assault Jasper, who was able to take back the fanny pack, but
dropped it as he tried to escape Det. C. Serrano who began
punching him repeatedly in the face.

17.  Thereafter, Branden who was inside the family home
and saw his brothers being assaulted by individuals unknown to
him, came outside to protect his brothers Jaykil and Jasper,
who were being physically attacked by the defendant officers,
who still failed to identify themselves as police or state

their purpose for even engaging with the brothers in the first instance.  After Jaykil and Jasper got away from the scene, the older brothers Branden and Justin were arrested.  Jasper and Jaykil voluntarily turned themselves in the next day.

18.  After Branden and Justin were arrested that day, supervising defendant officers Sgt. Luis Rivera immediately wrote and Sgt. Taray J. Tucker approved a police report falsely claiming plaintiffs incited mob violence and assaulted the officers by kicking, choking, punching, and pushing them on sight.  This false reporting was adopted by James Stewart, President of the Fraternal Order of Police (FOP Stewart), and defendant O'Hara, both of whom issued official statements to the media with full knowledge that those statements were not true.

19.  Both FOP Stewart and defendant O'Hara disseminated the false reporting for the sole purpose to coverup the unlawful actions of the defendant officers who had subjected Jaykil to racial profiling, unlawful detention, and assault and battery.  Both FOP Stewart, defendant O'Hara, along with defendant Mayor Ras Baraka, went on to issue public statements commending and praising the actions of their defendant officers and disparaging the plaintiff brothers in furtherance of the coverup.  Defendant Mayor Baraka did however, initially acknowledged the statements made by FOP Stewart created a narrative of mob violence that was completely untrue.

20.   On June 2, 2021, the day after the incident, defendant Det. Thomas Bender of the Essex County Prosecutor's Officer prepared a search warrant affidavit that included the same false information of mob violence as well as more false information that Jaykil possessed a gun on the day of the incident as no gun was recovered and the defendant officers never opened the fanny pack at all to see if a gun was located therein.  As a result of the false information included in the Bender's affidavit of probable cause, a search warrant was executed at the home address of claimants.

21.   During the execution of the search warrant, members of the Rodwell family, to include Monique and Zahir Rodwell, a minor child, were held at gunpoint with assault rifles and/or handcuffed. The officers also destroyed Zahir's expensive medication used for his medical issues.  The search warrant was sought for no other purpose than to further cover up the unlawful actions of the defendant officers and to terrorize the family into silence.  At the time of the search warrant execution, all four brothers already had been detained, with Jaykil and Jasper turning themselves in that morning.

22.   There was no legitimate reason for a search of the family home a day after the incident because Branden, Justin, Jaykil, and Jasper were all detained, none of the men were charged with a firearm, and Monique had offered to allow officers to search her home on the day of the incident.

Moreover, the entire incident was captured on a police body camera so there was no need to look for additional evidence as the brothers already were identified, in custody, and charged with resisting arrest, aggravated assault, and obstruction of justice.  None of the brothers were charged with any weapons related offenses at all.

23.  Not only did defendant Det. Thomas Bender from the Essex County Prosecutor's Office, homicide division, incorporate in his search warrant affidavit false information that the plaintiff brothers incited mob violence by kicking, punching, pushing, and choking the officers on scene; that the fanny pack contained a gun; and that the brothers were charged with weapons offenses, Det. Thomas Bender failed to inform the reviewing Judge that the people involved in the incident were already in custody; thereby, leaving the unfair impression that a violent assailant in possession of a gun was still at large.

24.  Defendant Det. Thomas Bender was not investigating a homicide.  Det. Bender had no good faith reason to believe that a gun would be found in the family home the next day or that any gun if recovered, belonged to the brothers who were already in custody.  This was especially so since no description of a gun ever was provided, and the investigating officers declined plaintiff Monique's invitation for them to search her home on the actual day of the incident.  The only

purpose for seeking the search warrant was to intimidate and
frighten the family into silence as part of a larger coverup.

25.   The City of Newark and its officials further sought
to prevent the family from speaking out against the injustice
that had been committed against Jaykil by orchestrating a
campaign of harassment and intimidation against the entire
Rodwell family spearheaded by defendants Mayor Baraka, Chief
of Staff Baraka, O'Hara and carried out by defendant Peppers,
then Captain of the South Ward and his subordinates.  On or
around June 5, 2021, Monique and her friends, family, and
supporters appeared at the 5th precinct police stationhouse to
protest the then detention of her four sons.

26.   As the protesters were gathering, defendants Chief
of Staff Baraka and O'Hara invited plaintiff Monique inside
the precinct under the guise of facilitating a jail call with
one of her sons whom she had not heard from since his arrest.
While inside the precinct, defendants Chief of Staff Baraka
and O'Hara, both on behalf of the City of Newark and Mayor
Baraka, directed Monique not to protest her sons' arrest or
have people gather at her house in support.  Chief of Staff
Baraka acknowledged that the defendant officers had no reason
to stop the Jaykil and that no officer announced they were
police officers or their intentions at the time of the initial
stop.

27.   Nevertheless, both defendants Chief of Staff Baraka,

speaking on behalf of Mayor Baraka, and O'Hara insisted that Monique "tone" things down.  Monique responded that she would not tell her supporters to stop protesting or going to her house as she was gravely concerned about what had happened to her sons and their wellbeing.  That same day when Monique and her supporters gathered at her house, they were met with police helicopters flown low over the Rodwell house and a police mobile station parked outside as a further attempt to harass, terrorize, intimidate, and silence the Rodwell family in furtherance of the coverup.

28.  Moreover, City officials and police officers from both the Newark Police Department and the Essex County Prosecutor's office went to the Rodwell house unannounced on separate occasions, with the sole purpose to intimidate and harass the Rodwell family into silence.  Defendant Mayor Baraka was fully aware of the matter as he went to the scene on the day of the incident.  Nevertheless, defendant Mayor Baraka, along with O'Hara, publicly praised and approved the unlawful actions of the defendant officers and further directed the continued harassment of the Rodwell family, consisting of constant police surveillance, blocking off the streets, and preventing anybody from going to the Rodwell's house who did not show they lived there.

29.  Police officers, under the daily supervision of defendant Captain Rasheen Peppers, followed Monique and her

sons Branden, Jaykil, and Jasper (all of whom since had been
released from jail and placed on pretrial supervision pending
resolution of the criminal charges), stopped visitors to the
Rodwell family house, forced other visitors to show
identification before entering the block, drove marked and
unmarked police vehicles past the Rodwell family house daily
and flashed police lights directly into the house at all times
of night.  This unlawful and abhorrent police activity was
directed towards plaintiffs Monique, Branden, Jaykil, and
Jasper for the sole purpose to intimidate, harass, and terrify
them into silence and to cover up the unlawful actions of the
defendant officers who racially profiled Jaykil in the first
instance.

30.  Despite plaintiff Monique's pleas to Mayor
Baraka and other City officials for it to end, the police
harassment, threats, and intimidation continued unabated for
approximately five months causing the plaintiffs great fear
and discomfort in their home that continues up until present
day.  Prior to the incident, there were no increased
complaints of gun violence on Cypress Street and the defendant
officers had no legitimate reason to believe that the brothers
were engaged in any criminal activity whatsoever on the day of
the incident.  In fact, the initial police report makes no
mention of a gun and only indicates that Jaykil was stopped
because he was wearing Dreads, a white t-shirt, and carrying a

fanny pack.

31.   To coverup the fact that none of the defendant
police officers announced they were police, or identified
their purpose for stopping Jaykil, prior to snatching his
property and assaulting him, Det. DaSilva manipulated his body
camera video footage immediately after the incident to erase
the audio of the initial stop.  In fact, Det. DaSilva accessed
his body camera footage for almost 4 hours on the day of the
incident and prior to writing his incident report, which was
in violation of the law and the attorney general guidelines at
the time.

32.   In or around 6 days after the incident and after
viewing the video footage, which had also been publicly
released by defendant O'Hara, defendant officers Det. M.
DaSilva, Det. C. Serrano, and Lt. P. Ranges wrote police
reports falsely claiming they had a reasonable articulable
suspicion that plaintiff Jaykil Rodwell possessed a gun in his
fanny pack prior to stopping him.

33.   Defendants Det. M. DaSilva and Det. C. Serrano wrote
false reports that they identified themselves as police at the
initial stop of Jaykil and further that Det. M. DaSilva
informed Det. C. Serrano he "felt" a gun when he first grabbed
Jaykil's fanny pack.  Defendant Det. M. DaSilva also
manipulated and destroyed the audio of the body camera footage
wherein he subsequently claimed he identified himself as

police and announced the recovery of a gun because he never
made those statements.

34.  Det. M. DaSilva engaged in evidence spoilation
because he and the other defendant officers who participated
in the initial stop, never identified themselves as police
officers or felt any type of gun inside the fanny pack.  Det.
M. DaSilva knew the audio would have refuted false information
in his and the other officers' police reports, so he deleted
the audio evidence.

35.  In his report, Det. DaSilva detailed a laundry list
of alleged "furtive movements" as justification for the
initial stop.  "Furtive movements" that have been outlawed as
a basis for an investigatory stop in the State of New Jersey.
Moreover, the body camera video footage reveals Jaykil was
doing nothing more than standing on the street in front of his
house on a nice summer day when the officers descended upon
him in broad daylight as if he did not have the
constitutionally mandated right to be free of their
unwarranted aggression and intrusion upon his property and
person.

36.  When Brandon and Jasper intervened to protect their
brother Jaykil from a reasonably perceived harm by unknown
intruders, the defendant officers Det. M. DaSilva, Det. C.
Serrano, and Lt. P. Ranges did nothing to deescalate the
situation they unfairly initiated, but instead doubled down

and filed criminal charges against the brothers and further falsified police reports and destroyed evidence to coverup their behavior of racial profiling, unlawful detention, and assault as against Jaykil.  Officers also can be heard on video saying that it was not going to be "good" and they were going to "fuck up" the block every day if the citizens did not calm down.

37.  Defendants Sgt. Taray J. Tucker and Sgt. Luis Rivera also participated in the coverup in their supervisory capacity, by writing and approving a police report falsely claiming the plaintiff brothers incited mob violence by assaulting the defendant police officers on sight.  Such an outrageous claim is unequivocally belied by the body camera footage.

38.  Defendant City of Newark condoned and acquiesced in the unlawful behavior of its defendant officers by policy and custom.  Immediately after the incident, Defendants Mayor Baraka and O'Hara, both high-ranking officials and policy makers at the time, issued official statements to the media commending and praising the actions of its defendant officers with respect to their treatment of Jaykil Rodwell and his brothers on the day of the incident.  Defendants Mayor Baraka and O'Hara made no attempts to discipline or even investigate plaintiffs' complaints of which they were fully aware, that the defendant officers racially profiled and illegally stopped

Jaykil on the day of the incident.

39.  Moreover, the City of Newark, failed to adhere to and otherwise effectively implement provisions of the 2016 Consent Decree, amended 2018, requiring remedial efforts by the Newark Police Department (NPD) in the areas of racial profiling, unlawful detentions, excessive use of force, de-escalation, retention of body worn camera footage, and the protection of plaintiffs' First Amendment rights.  When plaintiff Monique and her supporters started a peaceful protest, defendants Chief of Staff Baraka and O'Hara directed her to be quiet and not assemble with her friends, family, and supporters.

40.  When plaintiff Monique and supporters continued to exercise their First Amendment rights, defendants Mayor Baraka, O'Hara, Captain Peppers, and his subordinates unleashed a sustained reign of terror, intimidation, and harassment upon plaintiffs, all of whom are still afraid to live in their home at present but cannot afford to move.  The emotional trauma, psychological damaged, and civil rights violations suffered by the plaintiffs at the collective hands of defendants is pervasive and severe.

41.  The injury suffered by Jaykil should not rest with the resolution of his disorderly persons charges still pending over a year after the incident, but in the fact that, due to racial profiling, fabricated reports, spoilation of evidence,

and willful inaction of government officials vested with the power to act, he was required to defend against the charges at all.  Barring the legalized institution of slavery long prohibited and morally rejected by most, no concept of justice should mandate that a black man stand still in the face of an unsolicited physical attack on his person and property in front of his home from three unidentified, unknown white men who failed to make their purpose known.

42.  This is outrageous, but for the defendant City and County officials to use the awesome weight of their authority and resources to coverup and in retaliation for plaintiffs' exercise of their First Amendment rights, is simply beyond the pale.

## IV.  INCORPORATION OF ALLEGATIONS

43.  All the allegations in each of the foregoing paragraphs are incorporated by reference into each of the following claims for relief as if fully set forth in each such claim.

44.  Plaintiffs filed a timely Notice of Tort Claim and thus have preserved all their state rights.

## V.  CLAIMS FOR RELIEF

### A.  FIRST CLAIM FOR RELIEF

(Assault and Battery)

45.  The defendant officers Det. M. DaSilva, Det. C. Serrano, and Lt. P. Ranges committed an assault and battery upon plaintiff Jaykil by approaching him and immediately grabbing him pursuant to an unlawful investigatory detention premised on impermissible racial profiling and absent a reasonable articulable suspicion that Jaykil was involved in any criminal activity whatsoever.  Such actions of said defendant officers caused permanent injury to plaintiff.

46.  As a proximate result of defendants' actions, plaintiff Jaykil has sustained permanent injuries.  These injuries have caused and will continue to cause plaintiff great pain and suffering, both mental, emotional and physical.

**WHEREFORE,** plaintiff requests judgment against defendants for compensatory and punitive damages, together with attorney fees and costs of suit and any other and further relief as the Court may deem proper and just.

B.  SECOND CLAIM FOR RELIEF

(false imprisonment/unlawful search)

47.  The defendant officers'-Det. M. DaSilva, Det. C. Serrano, and Lt. P. Ranges-actions in initially stopping and searching plaintiff Jaykil in front of his home absent sufficient reasonable suspicion and/or probable cause of criminal activity constituted false imprisonment.  The defendant officers' actions were further committed with

malice, willfulness, and a wanton disregard for the rights of
plaintiff under the Fourth and Fourteenth Amendments and state
law.

48.   As a proximate result of defendants' actions,
plaintiff Jaykil has sustained permanent injuries.  These
injuries have caused and will continue to cause plaintiff
great pain and suffering, both mental, emotional and physical.

**WHEREFORE**, plaintiff requests judgment against defendants
for compensatory and punitive damages, together with attorney
fees and costs of suit and any other and further relief as the
Court may deem proper and just.

## C.  THIRD CLAIM FOR RELIEF

### (Use of Excessive Force)

49.   The defendant officers Det. M. DaSilva, Det. C.
Serrano, and Lt. P. Ranges (in his personal capacity), acting
under color of law, 42 U.S.C. § 1983, used excessive physical
force in the initial detention of Jaykil by immediately
accosting him without first announcing they were police
officers or advising him of why he was being stopped.  The
defendant officers did not even provide plaintiff Jaykil with
an explanation or opportunity to comply before physically
attacking him.

50.   These acts were committed maliciously and
intentionally against plaintiff Jaykil in violation of the

Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and against the laws of the State of New Jersey as well as the mandates of 2016 Consent Decree, amended in 2018. Such actions by the defendant officers were committed with wanton disregard for the constitutional rights of plaintiff Jaykil.

51. As a result of the foregoing deprivations, plaintiff has been permanently injured, damaged or otherwise harmed, which has caused him and will continue to cause him to suffer anxiety, humiliation, embarrassment, mental anguish, and psychological damages.

**WHEREFORE**, plaintiff requests judgment against defendants for compensatory and punitive damages, together with attorney fees and costs of suit and any other and further relief as the Court may deem proper and just.

D.  FOURTH CLAIM FOR RELIEF

(breach of duty)

52. The defendant officers breach their duty owed plaintiff Jaykil to serve and protect the public. The defendant officers-Det. M. DaSilva, Det. C. Serrano, and Lt. P. Ranges-who racially profiled plaintiff breached that duty by unlawfully detaining and assaulting him. Defendants O'Hara and Captain Peppers breached their duty to all plaintiffs by harassing, intimidating, and threatening them so as to prevent

them from exercising their 1st Amendment right to free speech/assembly, and 14th right to the equal protection of the law.

53.  As a result of the foregoing deprivations, plaintiffs have been permanently injured, damaged or otherwise harmed, which has caused them and will continue to cause them to suffer anxiety, humiliation, embarrassment, mental anguish, physical and psychological damages.

**WHEREFORE**, plaintiffs request judgment against defendants for compensatory and punitive damages, together with attorney fees and costs of suit and any other and further relief as the Court may deem proper and just.

E.  <u>FIFTH CLAIM FOR RELIEF</u>

(Municipal Liability-federal and state)

54.  Defendant City of Newark, in violation of 42 U.S.C.§ 1983, failed in their duty to plaintiff to adequately train/ supervise/discipline the defendant officers who, acting within the scope of their employment and pursuant to municipal policy and custom, racially profiled, unlawfully seized plaintiff Jaykil, and fabricated evidence in violation of 42 U.S.C §1981, the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, the laws of the State of New Jersey, and the New Jersey State Constitution.  Such a failure on the part of the defendant City of Newark amounted to a

deliberate indifference to the constitutional rights of
plaintiff Jaykil.

55.  Individual supervisory liability is alleged
against defendant Lt. Ranges for failing to properly supervise
the actions of Det. M. DaSilva and Det. C. Serrano while on
the scene.  Individual supervisory liability is alleged
against Sgt. Taray J. Tucker and Sgt. Luis Rivera for failing
to properly supervise defendant officers Det. M. DaSilva and
Det. C. Serrano in the preparation of their police reports.

56.  The City of Newark adopted a custom and policy of
allowing its police officers to violate the constitutional
rights of its black citizens.  Immediately after the incident,
Defendants Mayor Baraka and O'Hara, both high-ranking
officials and policy makers at the time, issued official
statements to the media commending and praising the actions of
its defendant officers with respect to their treatment of
Jaykil Rodwell and his brothers on the day of the incident.
These widespread proclamations by Mayor Baraka and O'Hara
signified the City of Newark's approval of its defendant
officers unlawful conduct towards Jaykil.

57.  The City of Newark, Mayor Baraka, and O'Hara were
well aware of the NPD's pattern of disparate treatment based
on race, unlawful detention, use of excessive force, and
violations of First Amendment rights in retaliation.  Pursuant
to a 2014 investigation conducted by the United States

Department of Justice-Civil Rights Division, the NPD engaged
in such prohibited behavior which disproportionately affected
black citizens. As a result, the City of Newark, entered into
the 2016 Consent Decree, amended in 2018, as a remedial
effort.

58. According to 2019 NDP statistics, published in a
2020 article by Jon Schuppe, entitled "Newark, N.J., wants to
be a model for police reform. But Black people are still
stopped more often," black people are still 1.5 times likely
to be stopped as white people and police force is 2.7 times
more likely to be used against black people than white.

59. For the month and year Jaykil was stopped, June
2021, statistics published by the NPD show that of the people
stopped city-wide for "Field Inquires," 1,666 were black and
402 were white.  321 of those people who ended up being
arrested were black, while 48 were white.  267 searched were
black, while only 34 were white.  30 black people were
subjected to the use of force, while forced was used against
white people 4 times.  The statistics for people who were
detained pursuant to an investigatory stop were not provided.

60. According to Mr. Schuppe's reporting, the racial
disparity in police stops and use of force has increased since
the adoption of the 2016 consent decree.  This is so even
though Peter Harvey, Esq., Independent Federal Monitor, was
put in place to monitor and oversee enforcement of the 2016

Consent Decree, amended in 2018, and provided a budget of $7.4 million over a 5-year period to accomplish the Consent Decrees delineated mandates.  The mission has failed on purpose.  When Mr. Harvey was informed about this case, he refused to respond at all, but indicated in an open forum that he was not inclined to monitor individual cases, preferring to rely solely on the conclusions of auditing and polling companies on his payroll.

61.  The City of Newark focuses on ensuring its officers attend training and teaching them how to write clever police reports, but this approach provides no deterrence for NPD officers intent on violating the rights of black people they encounter on the streets.  Under the guise of reform, the City of Newark only plays lip service to change, and leaves virtually unmolested its pre-Consent Decree patterns and practices of disparate treatment based on race in the area of police detentions, use of excessive force, arrests, and retaliation.

62.  As a result of the foregoing deprivations, plaintiffs have been permanently injured, damaged or otherwise harmed, which has caused them and will continue to cause them to suffer anxiety, humiliation, embarrassment, mental anguish, physical and psychological damages.

**WHEREFORE,** plaintiffs request judgment against defendants for compensatory and punitive damages, together with attorney

fees and costs of suit and any other and further relief as the Court may deem proper and just.

### F.  FIFTH CLAIM FOR RELIEF

(racial profiling/discrimination)

63.  Plaintiff Jaykil a black male, who enjoys membership in a protected class, was racially profiled by defendants Det. M. DaSilva, Det. C. Serrano, and Lt. P. Ranges.  As previously outlined in subsection E. of this complaint, during the June, 2021, the period wherein Jaykil was stopped by the defendant officers, statistics confirm that black people were still being stopped by NPD police officers at a far greater rate than white people city-wide (1,666 were black and 402 were white), and in 2020, NPD offers were stopping black people 1.5 times more than white people with force being used against black people 2.7 times more than whites.

64.  Here, the initial police report stated that Jaykil was stopped because he was wearing Dreads, white t-shirt, and carrying a fanny pack. In that report no mention was made of a gun and the report falsely claimed that Jaykil was part of a mob attack on the defendant officers.  Although the defendant officers wrote subsequent police reports claiming Jaykil was engaged in suspicious behavior indicative of criminal activity, the video shows that Jaykil was doing absolutely nothing when he was stopped except standing by a van parked in

front of his home.

65.   The reasons proffered by the defendant officers for their initial stop of Jaykil were pretextual and further in violation of existing State law.  The real reason Jaykil was stopped was because he is black and the officers assumed that a black man carrying a fanny pack would necessarily have a gun contained therein.  A non-black person under the same set of circumstances would not have been stopped and that is borne out by the NPD statistics previously discussed that postdate the Consent Decree.

66.   The defendant officers' stop of Jaykil based on racial profiling resulted in the deprivation of his civil rights as guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1981, the New Jersey Civil Rights Act (NJCRA), and the New Jersey Law Against Discrimination (NJLAD).

67.   The defendant officers to include Sgt. Taray J. Tucker and Sgt. Luis Rivera, further conspired with one another to deprive Jaykil of the equal protection of the law by subjecting him to racial profiling as a basis for the unlawful stop and then agreeing to coverup their actions by manipulating the video audio and preparing false police reports in violation of 42 U.S.C. § 1985 and the 14th Amendment to the United States Constitution.

68.   As a result of the foregoing deprivations,

plaintiff has been denied of his liberty, and otherwise
permanently injured, damaged or otherwise harmed which has
caused him and will continue to cause him to suffer anxiety,
humiliation, embarrassment, mental anguish, and permanent
psychological damages.

   **WHEREFORE**, plaintiff requests judgment against defendants
for compensatory and punitive damages, together with attorney
fees and costs of suit and any other and further relief as the
Court may deem proper and just.


                  G.  SIXTH CLAIM FOR RELIEF
                (Infliction of Emotional Distress)

   69.  All named defendants who assaulted, racially
profiled, and unlawfully detained/searched plaintiff Jaykil
intentionally subjected him to emotional distress.  All named
defendants who retaliated against plaintiffs and unlawfully
searched plaintiffs' home and/or person and/or caused them to
be harassed, intimidated, and terrorized inside and outside of
their home intentionally subjected them to emotional distress.

   70.  As a result of the foregoing deprivations,
plaintiffs have been permanently injured, damaged or otherwise
harmed, which has caused them and will continue to cause them
to suffer anxiety, humiliation, embarrassment, mental anguish,
and psychological damages.

   **WHEREFORE**, plaintiffs request judgment against defendants

for compensatory and punitive damages, together with attorney fees and costs of suit and any other and further relief as the Court may deem proper and just.

## H.  SEVENTH CLAIM FOR RELIEF

(First Amendment violation)

71.  Defendants Chief of Staff Baraka and O'Hara interfered with plaintiff Monique's First Amendment right to freedom of speech and the right to assemble in peaceful protest by directing her to not speak out regarding the injustice committed against her sons.  All in an effort to coverup the unlawful actions of its defendant officers.

72.  When plaintiffs did not comply, Mayor Baraka, O'Hara, and Captain Peppers retaliated against all the plaintiffs by intimidating, harassing, and terrorizing them in their home.  Det. Thomas Bender also obtained a warrant to search plaintiffs' home based on an affidavit that contained false information and material omissions and without probable cause, for the sole purpose to intimidate the family and keep them quiet to coverup the unlawful actions of the defendant officers Det. M. DaSilva, Det. C. Serrano, and Lt. P. Ranges. Det. Thomas Bender's actions violated plaintiff Monique's right to privacy, and rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

73.  As a result of the foregoing deprivations,

plaintiffs have been permanently injured, damaged or otherwise harmed, which has caused them and will continue to cause them to suffer anxiety, humiliation, embarrassment, mental anguish and psychological damages.

   **WHEREFORE,** plaintiffs request judgment against defendants for compensatory and punitive damages, together with attorney fees and costs of suit and any other and further relief as the Court may deem proper and just.


I.   <u>EIGHTH CLAIM FOR RELIEF</u>

(Abuse of Process-state claim)

   74.  Defendants Det. M. DaSilva, Det. C. Serrano, Lt. P. Ranges, Sgt. Taray J. Tucker, and Sgt. Luis Rivera made an improper use of the legal process by initiating criminal charges against plaintiff Jaykil.  Defendants were further motivated by an ulterior motive in initiating said legal proceedings to coverup their unlawful actions in the unlawful detention of Jaykil.  Defendant Det. Thomas Bender made improper use of the legal process by obtaining a search warrant absent probable cause and was motivated by an ulterior motive in initiating said process.

   75.  As a result of the foregoing deprivations, plaintiffs have been permanently injured, damaged or otherwise harmed and unlawfully, which has caused her and will continue to cause her to suffer anxiety, humiliation, embarrassment,

mental anguish, and psychological damages.

**WHEREFORE,** plaintiffs request judgment against defendants for compensatory and punitive damages, together with attorney fees and costs of suit and any other and further relief as the Court may deem proper and just.


### J.    NINTH CLAIM FOR RELIEF

76.    Defendant (s) John Does and Jane Does are fictitious names intended to identify any and all parties, including individuals, corporations and/or entities whose identities are presently unknown to plaintiff, who together with the named defendants were responsible for the deprivation of plaintiff's rights as guaranteed by the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, the New Jersey State Constitution and state law, and in violation of 42 U.S.C. §§ 1983, 1985, and 1981.

**WHEREFORE,** plaintiff requests judgment against defendants for compensatory and punitive damages, together with attorney fees and costs of suit and any other and further relief as the Court may deem proper and just.


### **JURY DEMAND**

Pursuant to R. 38 of the Federal Rules of Civil Procedure, plaintiff demands a jury trial on all issues so triable.

## **DESIGNATION OF TRIAL COUNSEL**

PLEASE TAKE NOTICE that Cynthia H. Hardaway, Esq. is hereby designated as trial counsel.

## **CERTIFICATION**

Counsel certifies that this pleading is presented in compliance to R. 11 of the Federal Rules of Civil Procedure.

**Cynthia H. Hardaway, ESQ.**
**Attorney for Plaintiffs**

/s/Cynthia H. Hardaway

DATED: November 2, 2022