UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>**JESSICA S. ALLEN**<br>UNITED STATES MAGISTRATE JUDGE | Martin Luther King, Jr. Federal Bldg.<br>& U.S. Courthouse<br>50 Walnut Street<br>Newark, New Jersey 07102<br>(973-645-2580) |

**LETTER ORDER**

February 6, 2026

TO:   ALL COUNSEL OF RECORD

Re:   Rodwell, et al. v. City of Newark, et al.
        Civil Action No. 22-6427 (EP) (JSA)

Dear Counsel:

Before the Court is Plaintiffs' informal motion seeking to depose non-party Ras Baraka, the Mayor of Defendant the City of Newark ("the City"). (*See* ECF No. 118, at times, "Plaintiffs' motion"). The City objects to Mayor Baraka's deposition and cross-moves for a protective order, contending the deposition is barred by the *Morgan* doctrine, which derives from the United States Supreme Court's Opinion in *United States v. Morgan*, 313 U.S. 409 (1941). (*See* ECF No. 119). No oral argument was heard. *See* Fed. R. Civ. P. 78. For the reasons set forth below, and for good cause shown, Plaintiffs' motion is **DENIED**, and the City's cross-motion for a protective order precluding the deposition is **GRANTED**.

I.   **RELEVANT BACKGROUND**[1]

This case arises out of a June 1, 2021 altercation on Cypress Street in Newark, New Jersey between brothers Jaykil Rodwell, Branden Rodwell, Jasper Spivey, and Justin Rodwell on one side, and defendant law enforcement officers Detective M. DaSilva, Detective C. Serrano, and Lieutenant P. Ranges on the other. The altercation began when the three officers allegedly assaulted Jaykil Rodwell without identifying themselves as members of law enforcement, prompting his brothers to intervene. The result was a prolonged scuffle that ultimately led to the arrest of all four brothers.

Beginning four days later, on June 5, 2021, Monique Rodwell, the mother of the four brothers, organized protests against the treatment of her sons by law enforcement. She alleges that Mayor Baraka and other local officials responded with a "campaign of harassment and intimidation" against her and her family. On November 2, 2022, Monique Rodwell, Branden

---

[1] The Opinion issued by the Honorable Kevin McNulty, U.S.D.J. (Ret.) on September 5, 2023 (the "September 5th Opinion"), sets forth the allegations of the case in detail. (*See* ECF No. 34). This background section draws from that Opinion, while omitting direct citations. Only what is relevant to deciding Plaintiffs' motion is recited herein.

Rodwell, Jaykil Rodwell, and Jasper Spivey (collectively "Plaintiffs") brought this action against the City, Mayor Baraka, and certain current and former city officials and law enforcement officers (collectively "Defendants"),[2] asserting various tort, constitutional, and statutory claims.

On January 2, 2023, Plaintiffs filed a First Amended Complaint ("FAC"). (*See* ECF No. 13). Mayor Baraka and the City filed motions to dismiss the FAC. In the September 5th Opinion, District Judge McNulty dismissed all claims against the City other than a *Monell* claim, and dismissed all claims against Mayor Baraka without prejudice. (*See* ECF Nos. 34-35). Thereafter, Plaintiffs declined to file a Second Amended Complaint, and Mayor Baraka was dismissed with prejudice. (*See* ECF No. 65).[3] As a result, the operative complaint remains the FAC. Plaintiffs remaining claims are: (1) a *Monell* claim against the City, and (2) several claims against the remaining individual city officials and law enforcement officers, including a First Amendment retaliation claim against Defendants O'Hara and Baraka, Jr. only. (*See* ECF No. 34 at 7).

## II.   PLAINTIFFS' MOTION

Plaintiffs seek to depose Mayor Baraka regarding his alleged "orchestration of the heavy police 'protest detail' deployed on Cypress Street with the purpose to harass and intimidate plaintiffs into silence and in retaliation for their protest efforts." (ECF No. 118 at 5). Plaintiffs acknowledge that the *Morgan* doctrine, which holds that high-level government officials should not be compelled to sit for depositions absent extraordinary circumstances, applies, and that Mayor Baraka's deposition should not be permitted absent extraordinary circumstances. (*Id.* at 6-8). Nonetheless, Plaintiffs claim that "[d]iscovery now has revealed the Mayor not only knew about but orchestrated the entire retaliatory campaign." (*Id.* at 1). They specifically contend a police mobile station had been parked on Cypress Steet; police officers had patrolled Cypress Street on foot and in cars; barricades had been marked by police officers requesting identification from anyone who wanted to enter Cypress Street; and a helicopter had been flown over the Rodwell home. (*Id.* at 1).

The City opposes Mayor Baraka's deposition and seeks a protective order, arguing that Plaintiffs have failed to show the extraordinary circumstances required by the *Morgan* doctrine and that the *Morgan* factors weigh against the deposition. The City advances four primary arguments. First, the claims against Mayor Baraka have been dismissed. (ECF No. 119 at 1). Second, the discovery to date confirms that Mayor Baraka undertook only the *pro forma* act of directing the City's Public Safety Director to establish a police presence on Cypress Street in the immediate aftermath of the June 1st altercation, and that Mayor Baraka does not possess any unique personal knowledge about the police protest detail. (*Id.* at 5-6). Third, individuals other than Mayor Baraka were responsible for coordinating and implementing the City's police protest detail and can (and have) provided the information Plaintiffs purport to seek from Mayor Baraka. (*Id.*) Finally, a deposition of Mayor Baraka does not involve essential information and would significantly interfere with his official duties. (*Id.* at 7-8).

---

[2] The individual defendants are: (1) Brian O'Hara, the City's Former Public Safety Director; (2) Amiri Baraka, Jr.; (3) Sergeant Taray J. Tucker; (4) Sergeant Luis Rivera; (5) Detective M. DaSilva; (6) Detective C. Serrano; (7) Former Captain Rasheen Peppers; (8) Lieutenant P. Ranges; and (9) Detective Thomas Bender.

[3] This case was reassigned to the Honorable Evelyn Padin, U.S.D.J. on November 29, 2023. (ECF No. 63).

## III.     DISCUSSION

### A.     Legal Standard

Federal Rule of Civil Procedure 26 permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1).  However, the Court may enter a protective order precluding discovery upon a showing of good cause.  *See* Fed. R. Civ. P. 26(c).

In *United States v. Morgan,* the United States Supreme Court held that high-level government officials should not be compelled to appear for depositions absent extraordinary circumstances. 313 U.S. 409, 422 (1941); *see also Buono v. City of Newark,* 249 F.R.D. 469, 470-71 n.2 (D.N.J. 2008).

Applying *Morgan,* courts have decided on a case-by-case basis whether extraordinary circumstances exist that warrant the deposition of a high-level government official.  *See U.S. v. Sensient Colors, Inc.,* 649 F. Supp. 2d 309, 316 (D.N.J. 2009).  In reaching this determination, several courts in this District have adopted a five-part test, referred to as the *Buono* factors, under which the party seeking the deposition must show that:

(1) the official's testimony is necessary to obtain relevant information that is not available from another source;
(2) the official has first-hand information that cannot reasonably be obtained from other sources;
(3) the testimony is essential to the case at hand;
(4) the deposition would not significantly interfere with the ability of the official to perform his government duties; and
(5) the evidence sought is not available through less burdensome means or alternative sources.

*Sensient Colors,* 649 F. Supp. 2d at 322; *see also Buono,* 249 F.R.D. at 470-71 n.2 (quoting *Bogan v. City of Boston,* 489 F.3d 417, 423-24 (1st Cir. 2007)).

Since the five-factor test sets forth overlapping factors, they are typically considered in groups. *See Sensient Colors, Inc.*, 649 F. Supp. 2d at 322.  Factors (1), (2), and (5), which all focus on the deponent's level of personal knowledge or involvement of the underlying circumstances, are generally considered first, followed by factors (3) and (4). *See Sensient Colors,* 649 F. Supp. 2d at 322; *see also Stevenson v. City of* Newark, 2024 WL 1526102, at *5 (D.N.J. Apr. 9, 2024). While "personal involvement in or knowledge of the subject events seems to be a necessary prerequisite for deposing a high-ranking government official . . . a party *must* still show that the information cannot be gleaned from other sources or achieved through less burdensome means." *Sensient Colors,* 649 F. Supp. 2d at 323 (emphasis added).  Finally, even if the government official has personal knowledge, the information sought must be "essential to the case."  *Id* at 322-23 ("[T]he information sought should form a key component of the party's claim or defense."); *see also Buono,* 249 F.R.D. at 470-71 n.2.

B.  Application of the *Buono* factors[4]

1.  Personal Involvement, Knowledge, and Whether the Information Is Available from Other Sources

The first group of *Buono* Factors—Factors 1, 2, and 5—require the Court to focus on whether the witness has personal involvement and knowledge that cannot be obtained from other sources. *See Sensient Colors,* 649 F. Supp. 2d at 322. Here, Plaintiffs contend that Mayor Baraka's deposition is necessary to prove their case because he allegedly orchestrated the police protest detail for the purpose of harassing and intimidating Plaintiffs into silence and in retaliation for their protest efforts that began on June 5, 2021. (*See* ECF No. 118 at 5-6). The Court disagrees that the first group of *Buono* factors weigh in favor of allowing the deposition to proceed.

At the outset, the Court notes that, in their letter brief, Plaintiffs appear to seek Mayor Baraka's deposition because discovery has revealed that Mayor Baraka *himself* was responsible for the alleged First Amendment retaliation that occurred. (*See, e.g.*, ECF No. 118 at 7-8). Indeed, Plaintiffs cite the September 5th Opinion's conclusion that the FAC failed to state a First Amendment retaliation claim against Mayor Baraka but then purport to argue that discovery has shown otherwise. (*See id.*) To be clear, the September 5th Opinion dismissed the claims against Mayor Baraka, and he is no longer a party to this case. Thus, to the extent Plaintiffs are seeking discovery to support a dismissed claim, the deposition of Mayor Baraka is clearly not appropriate. However, to the extent Plaintiffs seek Mayor Baraka's deposition to support the First Amendment retaliation claim that remains against Defendants O'Hara and Baraka, Jr., Plaintiffs have not shown that Mayor Baraka has personal involvement or knowledge that is not available from other sources.

The City does not dispute that Mayor Baraka directed the police presence in the area surrounding Cypress Street immediately following the June 1, 2021 altercation. (*See* ECF No. 119 at 5-6). However, the City argues that the discovery taken to date reflects that Mayor Baraka's involvement was limited to *pro forma* directives, and that Plaintiffs have not shown that Mayor Baraka has personal knowledge of, or any involvement in, the particulars or execution of the police detail that occurred following the protests that began four days later on June 5, 2021. Based on the record presented, this Court agrees.

The deposition testimony presented to the Court supports this conclusion. First, Plaintiff Monique Rodwell testified, consistent with the City's position, that Mayor Baraka directed increased police presence on Cypress Street immediately after the incident on June 1, 2021, and prior to the commencement of any protests on June 5, 2021. (*See* Transcript of Deposition of Monique Rodwell, dated November 15, 2024 ("Rodwell Tr."), at 66:21-25; ECF No. 118, Ex. A). Second, Defendant O'Hara testified that Mayor Baraka directed the police presence be established shortly after the incident, not on June 5, 2021, in response to protests. (*See* Transcript of Deposition of Brian O'Hara, dated July 10, 2025 ("O'Hara Tr."), at 29:1-31:11, 36:2-8, ECF No.

---

[4] Whether a government official is sufficiently high-ranking for purposes of the *Morgan* doctrine is determined on a case-by-case basis. *Buono,* 249 F.R.D. at 470-71 n.2. Here, there is no dispute that Mayor Baraka is a high-level government official or that the *Buono* factors apply. (*See* ECF No. 118 at 6-7; ECF No. 119 at 2-3). This conclusion is supported by two decisions from this District. *See Stevenson*, 2024 WL 1526102, at *2 (Mayor Baraka qualifies as a high-level government official for purposes of *Morgan* doctrine); *Buono*, 249 F.R.D. at 472 n.2 (Mayor of Newark is a high-level government official for *Morgan* purposes).

118, Ex. B). Third, Plaintiffs deposed Newark Police Captain Richard Casale, commander of the Emergency Services Unit, who testified that Defendant O'Hara directed that he implement a "stabilization grid" following the altercation, that he assisted in the implementation of the grid, and that the authority to issue a stabilization grid rested with a Chief or Deputy Chief in the Newark Police Department. (*See* Transcript of Deposition of Richard Casale, dated May 5, 2025 ("Casale Tr."), at 11-7:25, 17:5-12, 29:10-30:8, & 32:17-23, ECF No. 118, Ex. G).

In short, the deposition testimony submitted to the Court shows that Mayor Baraka only directed Defendant O'Hara to implement additional police presence on Cypress Street on or about June 1, 2021, following the altercation but days before the protests began on June 5th; that Defendant O'Hara directed that a police detail be established; and that Defendant O'Hara relayed that message to Captain Casale. (O'Hara Tr. 29:7-31:13, 36:2-8; Casale Tr. 11-7:25, 17:5-12, 29:10-30:8). Further, nothing has been presented to the Court that suggests Mayor Baraka did, or even had the discretion to, determine and implement police tactics, such as deploying helicopters, establishing a stabilization grid, directing police patrol patterns, or setting protest detail perimeters. (*See, e.g.*, Casale Tr. at 33:19-34:19).

Despite this, Plaintiffs appear to argue that Mayor Baraka should nevertheless be deposed because neither Defendant O'Hara nor Captain Casale could specifically recall during their respective depositions who ordered a helicopter to be flown over Cypress Street. However, this is not a basis to depose Mayor Baraka. First, Captain Casale testified about who has the power to authorize the use of a helicopter, and his testimony does not identify the Mayor. (*See* Casale Tr. at 33:19-34:19). Second, Captain Casale's testimony makes clear that helicopters are routinely deployed during protest activity to ensure safety, regardless of the specific circumstances. (*See id* at 36:20-37:1). The fact that Defendant O'Hara and Captain Casale could not remember who specifically authorized use of the helicopter is not extraordinary circumstances that would warrant deposing Mayor Baraka. Rather, it is pure speculation and a fishing expedition to suggest that Mayor Baraka should sit for a deposition to explain the use of a helicopter—especially when testimony to date makes clear the individuals who authorize the use of helicopters and the protocol for doing so, and neither scenario involves the Mayor. Thus, for the above reasons, Plaintiffs fail to show that Mayor Baraka has unique, personal knowledge that would support taking his deposition.[5]

Plaintiffs also have not shown that any information regarding the police protest detail is unavailable from other sources. Indeed, for the most part, the depositions cited and relied upon by both parties in their motion papers (and described above) appear to provide Plaintiffs with the

---

[5] Plaintiffs' motion confirms that they served an interrogatory on the City, seeking the identity of the person(s) who ordered the helicopter to be deployed to which the City objected on the basis that the interrogatory is "vague, indefinite, overbroad and . . . . unduly burdensome." (ECF No. 118 at 5, referring to Interrogatory No. 14, attached as Ex. K). No party brought this apparent written discovery dispute to the Court's attention prior to the filing of Plaintiffs' motion. Nevertheless, the Court has reviewed Interrogatory No. 14 and the City's objection, (*see id.* at Ex. K), and finds that the City's objections are without merit. Specifically, the Court finds that Plaintiffs' Interrogatory No. 14 is not vague, indefinite, or overbroad, nor would it be unduly burdensome for the City to respond. Accordingly, the Court directs the City to provide a response to Plaintiffs' Interrogatory No. 14. Parenthetically, the fact that Interrogatory No. 14 was served and objected to (but not raised with the Court), is, in fact, proof that there are less intrusive ways for Plaintiffs to obtain information regarding the police protest detail other than deposing Mayor Baraka. *See Sensient Colors*, 649 F. Supp. 2d at 323 (deposition not appropriate when discovery is obtainable from less intrusive means).

specifics of the police protest detail, including who implemented it and when. In other words, Plaintiffs are not pursuing new information from Mayor Baraka, rather they are seeking additional testimony on topics already explored with other witnesses about which they testified. Thus, even if Mayor Baraka had personal knowledge, any such testimony about the police protest detail would appear duplicative. The *Morgan* doctrine does not support taking a high-level government official's deposition merely to double check or confirm the testimony of other witnesses.

Based on the above, the Court concludes the first, second, and fifth *Buono* factors weigh against allowing Plaintiffs to proceed with Mayor Baraka's deposition.

### 2. Whether the Testimony is Essential

The third *Buono* factor, whether the testimony sought is essential to the case, weighs against Mayor Baraka's deposition. There is no apparent dispute that Mayor Baraka directed the increased police detail near Cypress Street be put into place prior to the onset of any protests. Yet, the testimony before the Court confirms that Mayor Baraka was not directly in charge of organizing or implementing the police presence, as Defendant O'Hara testified that it would have been at the direction of the Chief of Police or Deputy Chief. (*See* O'Hara Tr. 40:14-41:11). In short, no testimony has been presented suggesting Mayor Baraka had any involvement in the actual implementation of the police protest detail on Cypress Street following the protests, or that the police detail was established in response to the protests, as opposed to the altercation four days earlier. For that reason, Plaintiffs have not shown that Mayor Baraka's deposition testimony is relevant, let alone essential, to their First Amendment retaliation claim. *See, e.g., Sensient Colors,* 649 F. Supp. 2d at 322-23 ("[T]he information sought should form a key component of the party's claim or defense.").

### 3. Whether the Deposition Would Result in a Significant Interference with Mayor Baraka's Official Duties

The fourth and final *Buono* factor requires the requesting party show that "the deposition would not significantly interfere with the ability of the official to perform his government duties." *Buono,* 249 F.R.D. at 470-71 n.2. Plaintiffs do not address this factor in their motion papers, and therefore, fail to carry their burden of establishing this prong is met. *See 8 Erie St. JC LLC v. City of Jersey City*, 2023 WL 3735949, at *8 (D.N.J. May 31, 2023). Nevertheless, for completeness, the Court will analyze this factor. The Court notes that Mayor Baraka serves as Mayor of New Jersey's largest city, "responsible for overseeing public safety, city administration, and countless policy initiatives that demand his continuous attention." (ECF No. 119 at 7-8). And, as another court in this District has reasoned, "depositions of mayors arising from their official duties are inherently disruptive." *8 Erie Street*, 2023 WL 3735949, at *8. Further, as the City argues, Plaintiffs "offer no specificity regarding the scope, duration, or necessity of this examination, nor do they identify any safeguards to ensure that the Mayor's time and resources are not needlessly diverted." (*Id.* at 8). For those reasons, Plaintiffs have failed to show that the deposition would not interfere with Mayor Baraka's duties, and thus, have failed to carry their burden with respect to the fourth *Buono* factor.

6

## IV. CONCLUSION

Based on the above, the Court finds that all five *Buono* factors weigh against Plaintiffs' request to depose Mayor Baraka. Accordingly, Plaintiffs' motion to compel the deposition, (ECF No. 118), is **DENIED**, and the City's cross-request for a protective order precluding Mayor Baraka's deposition, (ECF No. 119), is **GRANTED**. However, the City is directed to provide a response to Plaintiffs' Interrogatory No. 14 on or before **February 17, 2026**. The Clerk of the Court is directed to terminate the motions filed as ECF Nos. 118 and 119.

**SO ORDERED**.

                                                       s/Jessica S. Allen
                                                      **Hon. Jessica S. Allen**
                                                      **United States Magistrate Judge**

cc: Honorable Evelyn Padin, U.S.D.J.